WALLACE et ux. v. McCLUNG et al.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1896.)

No. 139.

ESTOPPEL—RECORD—DEED.

One W. and his wife sold and conveyed to W. and J. B. a tract of land which they owned in right of the wife. Afterwards, W. and J. B. brought suit to have the deed canceled, on the ground of defect of title, and the purchase money refunded. A decree was entered in their favor, as to the greater part of the land, adjudging the title of W. and wife thereto to be defective, requiring a refund of the purchase money, and a reconveyance to W. and wife of the land. The deed of reconveyance was duly made by W. and J. B., but they never surrendered possession of the land. On the same day, when such deed was made, W. and wife conveyed the remaining part of the land to the father of W. and J. B., who claimed, under another title, the part as to which the title of W. and wife had been adjudged bad. This deed contained a recital of the suit brought by W. and J. B. against W. and wife, and an obscure reference to the adjudication therein, as to the title and to the claim of the father of W. and J. B. W. and wife afterwards brought an action of ejectment against the occupants, who claimed under W. and J. B. and their father, to recover the land covered by the deed of W. and J. B., made pursuant to the decree in their suit. *Held*, that neither the suit by W. and J. B. nor the deed, made to their father, with its recitals, nor both together, estopped W. and wife to claim the land included in the deed of W. and J. B. to them.

In Error to the Circuit Court of the United States for the District of West Virginia.

This action was brought in the circuit court of Greenbrier county, W. Va., in November, 1891, and proceeded there until February 1, 1894, when it was removed by writ of certiorari into the circuit court of the United States for the district of West Virginia, at Charleston, in that state. It was there proceeded in to judgment, rendered on the 12th day of December, 1894, and has been brought here by writ of error issued on the 4th of June, 1895. The suit was in ejectment and was brought by the plaintiffs, husband and wife, for 1,000 acres of land claimed by them in right of the wife, Miriam Wallace. The declaration alleged that this tract of 1,000 acres had been granted to her by the wife's father, James H. Bowen, out of, and as a part or, an entry of 2,650 acres, which the said Bowen had made under a patent for the same issued to him by the commonwealth of Virginia, before the formation of what is now West Virginia.

The testimony shows that this commonwealth had granted to Andrew Moore, in June, 1795, a tract of 11,300 acres of land in Greenbrier county, on the waters of Hominy and Big Clear creeks, headwaters of Gauley and Meadow rivers, which lands adjoined a tract of 5,000 acres previously granted to Andrew Moore. Moore made deeds of parts of the 11,300 acres, respectively, to William McClung and to a family named Welch. Each of these two deeds conveyed a third of the large tract, or about 3,766 acres, to the respective grantees, leaving a third of the original tract to Moore himself. The northernmost of these three tracts was the one retained by Moore; the middle one, adjoining it on the south, going to the Welches, and the southernmost tract, of 3,766 acres, going to McClung. The deeds to the Welches and McClung were made in March, 1810. The tract granted to McClung was, in the course of time, forfeited to the commonwealth for the nonpayment of taxes, and was never redeemed by or for McClung. It became liable to re-entry, in consequence, under later patents from this commonwealth. On the 30th November, 1846, James H. Bowen did apply for and obtain from Virginia a grant of 2,650 acres, marked by a survey which he had previously had made, of land lying in Greenbrier county, on the waters of the before-mentioned Hominy and Big Clear creeks. It is to be inferred that

the intention and object of. James H. Bowen was to lay this grant on the third or southernmost portion of the old 11,300-acre grant to Moore, which had been conveyed to William McClung, and by him forfeited to the commonwealth. In the belief that this McClung tract had been forfeited, and that his survey of 2,650 acres had been located on the forfeited land, James H. Bowen devised, by his last will, dated the 26th August, 1851. 1,000 acres of this survey to his daughter Miriam, in whose right this suit is brought; the Bowen survey necessarily covering the forfeited McClung tract.

The shaded portion is the "blue coloring" referred to.

The Welch tract passed, in the course of time, to the ownership of one Gideon Brown, thence to his son William Brown, and from this William, by sundry conveyances, to the defendants in this suit. The blue map or plat, opposite page 167 of the record, and called the "Verdict Map," will be used for reference in the following remarks. An inspection of this map will show that the northernmost line claimed as dividing the parts of the original 11,300-acre tract between Welch and Moore was Y to P. The verdict map also shows a line, claimed as dividing Welch from Moore, considerably south of this, marked O to O. There is a third line, mentioned in the record, but not marked on the map, alleged by some to be the true division between Welch and Moore, running from 37 to an undefined point between O and N. As to the division between Bowen and the present claimants of the Welch tract, there is a line on the verdict map running from Z to N; and, as Bowen located upon the forfeited McClung tract, this may be called the "McClung and Welch Line." The claim of Bowen's daughter, Mrs. Wallace, is that this line, Z to N, is the true demarkation between the defendants, claiming the Welch tract, and herself, claiming, under the will of James H. Bowen, 1,000 acres out of the grant of 2,650 acres to Bowen located on the forfeited McClung tract. The defendants claim that the line between the McClung and the Welch tracts runs from S to M on the map. The fact that there are three different lines, each claimed as the true division between the Welches and Moore, shows a great confusion of lines in respect to the lands conveyed by Moore. There is a like confusion in regard to the true line of division between the forfeited tract of McClung, taken up, in

chief part, subsequently, by Bowen, and the Welch tract. The plaintiffs in this suit claim that the line, Z to N, is the true division between the Welch tract and McClung or Bowen. It is evident, from this confusion of lines, that the case was emphatically one for a jury.

By deed of May 17, 1881, Mrs. Wallace and her husband conveyed the 1,000 acres which has been mentioned to William and Joseph Brown for the sum of $1,400. The tract was described by metes and bounds, and is designated by the blue coloring on an extract of the verdict map, which we make, on said extract, to mark and define the Wallace claim. It is evident, from the record, that the issue between the plaintiffs and defendants below was between the line, Z to N, insisted upon on behalf of Mrs. Wallace, and the line, S to M, maintained by the Browns to be the true line between the Welch tract, and the McClung or Bowen tract. It was a question of fact and of boundary lines.

In the year 1883, William and Joseph Brown filed their bill in chancery in the circuit court of Greenbrier county. praying that the deed from Wallace and wife to them be canceled, on the ground, among others, of defect of title, and that the defendants, Wallace and wife, be decreed to refund the purchase money which had been paid. The cause was regularly proceeded in, and on the 13th day of November, 1885, a final decree was entered granting the prayer of the bill; that is, adjudging that the title of the defendants to the land was defective, except as to 162 acres thereof, lying below the before-mentioned line, S to M, and directing them to refund the purchase money, and the plaintiffs to reconvey the land to the defendant Miriam Wallace by deed with special warranty of title, and indemnifying the defendants against all loss and damage which they may have sustained from the use of the land while in their (the Browns') possession, which deed was afterwards made on the 7th day of November, 1887, and duly recorded. And on the same day Wallace and wife conveyed the said 162 acres to Gideon Brown, who was the father of William and Joseph Brown. But William and Joseph Brown have never surrendered to Wallace and wife possession of the land, or any part thereof, reconveyed by them as aforesaid. Accordingly, this action of ejectment to recover the land was commenced in November, 1891, by Wallace and wife, in which H. H. Fay, R. H. Crozier, and M. Erskine Miller, who then occupied the land, were substituted as defendants, upon whose petition the case was afterwards removed to the federal court, as already stated. The plaintiffs moved to remand the case to the state court, which motion was overruled.

The defendants claim that Gideon Brown acquired title to the land, except the said 162 acres, about the time that Wallace and wife undertook to convey it to William and Joseph Brown, and that he (Gideon) devised it in 1889 to his son, the said William, two years after the deed of William and Joseph Brown reconveying it to Wallace and wife. The defendants claim under sundry deeds and conveyances from William Brown as the devisee of Gideon. On the trial of the action, the circuit court, over the objection of the plaintiffs, admitted in evidence the record of the said chancery suit, which ruling, the plaintiffs insist, was erroneous. It also, after the evidence was closed, directed a verdict for the defendants, "on the ground that the record and deed, taken together, constituted an estoppel." Judgment was entered for defendants, which is here on writ of error.

W. R. Staples and L. L. Lewis, for plaintiffs in error.

Wesley Mollahan and J. F. Brown, for defendants in error.

Before SIMONTON, Circuit Judge, and HUGHES and PAUL, District Judges.

HUGHES, District Judge (after stating the facts). It is first objected by the plaintiffs, as a ground of error in the court below, that the case was improperly removed from the state to the federal court, for the alleged reason that the petition for removal was made too late. The petition was filed in the federal court on the

4th of November, 1893. The notice of suit had been filed in the state court on the 17th of October, 1891, and the declaration on the 5th of November next following. The defendants pleaded on the 20th of April, 1892. Therefore the motion for removal on the ground of diversity of citizenship had been lost at that date. But the defendants had still time to rely on local prejudice and influence, if they existed, as good grounds for removal; the case not having yet proceeded to trial. They distinctly state, in their petition, that there had never been a trial of the action of ejectment. The record shows that there had not been. We must, therefore, pass upon the question of local prejudice, and we concur with the circuit court in its ruling on that subject. The affidavits filed seem to us to leave no doubt on this question. The matter of local prejudice necessarily rests largely in the discretion of the trial judge. We think the case was properly removed, and we affirm the judgment of the court below denying the motion to remand.

We come, therefore, to consider whether it was competent for the judge of the circuit court to direct a verdict for the defendants without a trial of the facts in issue respecting the validity of one or the other line between the Welch and Bowen tracts,—the plaintiffs' line, Z to N, or the defendants' line, S to M, laid down on the verdict map. The judge of the circuit court took this question of fact from the jury on a technicality. His ruling in that respect was based upon the idea that, technically, the plaintiffs were estopped from recovering in this action—First, by a recital in their deed conveying the 162 acres of land to Gideon Brown; and second, by the proceedings in the suit against them in the circuit court of Greenbrier county by William and Joseph Brown, in which their title to the 1,000 acres of land devised to Mrs. Wallace by James H. Bowen was adjudged defective, except as to 162 acres of the tract lying below the line, S to M, and conveyed, as just stated, to Gideon Brown by deed. This grants 162 acres, more or less, and adds:

"Being all the land, ascertained by the surveys, and plats filed in the chancery cause of William and Joseph Brown v. Washington Wallace and others, lately pending in the circuit court of said county of Greenbrier, and devised to said Miriam Wallace by her father, James H. Bowen, of the 1,000 acres conveyed by said Washington and Miriam Wallace to said William and Joseph Brown, by deed dated on the 17th day of May, 1881, and recorded, etc., after deducting from said 1,000 acres the lands covered by the Welch title, which was owned by said Gideon Brown."

The intention of every deed must be obvious, and the language expressing that intention must be precise, clear, and unambiguous. There can be no estoppel if these qualities are wanting in the instrument claimed to effect it. The language of the deed of the Wallaces to Gideon Brown is wanting in both respects. The sentence "being all the land ascertained by the surveys and plats filed in the chancery cause," etc., "and devised to Miriam Wallace," etc., omits to define what was ascertained by the surveys, and is followed by references to exhibits filed in court proceedings, to deeds, to surveys and maps, all requiring close and intelligent examination, study, and research. To hold a married woman, un-

skilled in land titles, and unversed in legal phrases, to be estopped by such language as that above quoted from the deed conveying the 162 acres to Gideon Brown would often work the utmost hardship, would invite to fraud, and be contrary to public policy. In the instance under consideration, Gideon Brown, claiming to own the adjoining Welch tract, and anxious to possess himself of Mrs. Wallace's 1,000 acres, purchases from her the 162 acres, which he cannot possibly obtain otherwise, and takes a deed from her for the 162 acres, which is found to contain a confused recital relating to the 838 acres. This recital those who claim from him now set up as operating an estoppel against Mrs. Wallace as to the larger number of acres. Such a contention by the beneficiaries of Mrs. Wallace's deed is obviously inadmissible. The Wallaces, in granting the 162 acres, which are theirs beyond question, were under the necessity, in the language distinguishing, and in the deed separating, the smaller part of the tract from the larger, to recite the fact that the larger part of the tract had not been decreed to them. Is the mere recital of the fact of such a decree by a party aggrieved by it, conclusive against him,—so conclusive as to work a conveyance, without deed, and, in the case of a married woman, without privy examination, of land not conveyed, but only alluded to in the deed mentioning the decree? We think not. It is plain to us that the Wallaces were not estopped or concluded, by their deed granting the 162 acres, against asserting any rights which they may have in the 838 acres.

The case is the same as to the suit in the state court. The decree in that suit had not been fully obeyed by the complainants who brought it. They had, indeed, executed a deed of reconveyance to Mrs. Wallace, but certain persons holding from them still held possession. The suit here is brought by the Wallaces against those persons to recover the possession decreed them by the state court. Whatever may be the ultimate rights of parties, wherever may lie the final title to the land, yet certainly, as to the purposes of this suit of the Wallaces for possession under a decree in another suit directing these defendants to restore possession to them, the proceedings in the other suit, which decreed such possession, cannot be held to estop them from suing for the possession which itself decreed. As to this matter of possession, under the decree in the other suit, if there be estoppel at all, it is against the defendants.

If the decree of the state court had been obeyed in full, the Wallaces would have entered into possession of the land in suit, and the defendants here would have been put to their suit to recover possession on the strength of their own right. The complicated question of title would have been examined by a jury, and would have been settled by its verdict. The proceedings in the case at bar are quite unsatisfactory in respect to the title of the land in controversy. The trial of a contention over rival and conflicting boundary lines has not been by a jury. The very right of this case should have been so tried. We are of opinion that the court below erred in holding that the recital in the deed of the

Wallaces to Gideon Brown, conveying 162 acres of the tract of 1,000 acres mentioned in the proceedings, operated as an estoppel against them in this suit, and in holding that the record in the suit in the state court operated to the same effect, and that the said deed and record, taken together, estopped the plaintiffs from recovery. We think the court below erred in directing a verdict for the defendants on the ground of these alleged estoppels. The judgment of the court below, rendered on this verdict, must therefore be reversed and the cause remanded to the circuit court of the district of West Virginia, to be proceeded in in accordance with the views expressed in this opinion.